UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.   CASE NO. 8:08-cr-203T-23TBM
           8:10-cv-685-T-23TBM

JEREMIAH L. CARSON
_____/

**O R D E R**

Carson's motion to vacate under 28 U.S.C. § 2255 (Doc. 1) challenges the validity of his conviction for distributing five grams or more of cocaine base, for which offense he serves 10 years imprisonment. The United States moved (Doc. 14) to dismiss the motion to vacate as time-barred. An earlier order denied the motion to dismiss. (Doc. 20) The United States argues (Doc. 30) that Carson's motion is subject to dismissal as untimely under *Natson v. United States*, 494 Fed. App'x 3 (11th Cir. 2012).[1] Carson's situation is nearly identical to Natson's because each involves the same mailroom procedures at the same prison.

The Anti-Terrorism and Effective Death Penalty Act creates a limitation for a motion to vacate. Section 2255(f) states, "A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of (1) the

---

[1] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

date on which the judgment of conviction becomes final . . . ." The parties agree that the limitation expired on February, 2010, but disagree about the day on which Carson submitted his motion to prison authorities for mailing.

*Houston v. Lack*, 487 U.S. 266, 276 (1988), establishes the "mailbox rule" by holding that a "notice of appeal [i]s filed at the time petitioner deliver[s] it to the prison authorities for forwarding to the court clerk." The "mailbox rule" applies to Carson's *pro se* Section 2255 motion to vacate. *Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999). The "mailbox rule" was established for a *pro se* litigant, in part, because, "[u]nlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped 'filed' or to establish the date on which the court received the notice." 487 U.S. at 271. *Houston* specifically recognizes that, as is commonly required by a prison's administrative procedure, prisons regularly record the date on which an inmate gives legal mail to prison authorities.

> The *pro se* prisoner does not anonymously drop his notice of appeal in a public mailbox—he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date. Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one.

487 U.S. at 275. Consequently, the underlying rationale for the "mailbox rule" is the prison's legal mail log, which shows the date that prison authorities took custody of

the prisoner's legal mail.  The prison authorities, not the prisoner, have a greater ability to maintain this evidence, as *Houston*, 487 U.S. at 276, explains:

> The prison will be the only party with access to at least some of the evidence needed to resolve . . . questions [about a delay in delivery of mail] and evidence [to prove the cause of a delay] will be hard to come by for the prisoner confined to his cell, who can usually only guess whether the prison authorities, the Postal Service, or the court clerk is to blame for any delay.

The "mailbox rule" is codified in Rule 3(d), Rules Governing Section 2255 Proceedings for the United States District Court, which states:

> A paper filed by an inmate confined in an institution is timely if it is deposited in the institution's internal mail system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

If an inmate follows these procedures, the prison authorities have the burden of proving the date on which the prisoner delivered the mail to prison authorities for posting.  *Dean v. Sec'y, Dep't of Corr.*, 361 Fed. App'x 38, 39 (11th Cir. 2010); *Allen v. Culliver*, 471 F.3d 1196, 1198-99 (11th Cir. 2006).  Carson avers in his sworn affidavit (Doc. 17) that he timely submitted his Section 2255 motion to prison authorities for mailing on January 14, 2010, with proper postage affixed, and that, after ascertaining

from the clerk's office that no motion to vacate was received, he sent, by certified mail, a motion to vacate in March, 2010, which is one month beyond the limitation.[2]

The United States provides an affidavit from the supervisor of the mailroom at the Federal Corrections Complex in Coleman, Florida. The affiant admits that, unlike certified mail, the Bureau of Prisons ("BOP") maintains no records for outgoing legal mail. "[T]he BOP would not have a record on file of when items mailed as general or legal/special were received by staff. The only outgoing mail log maintained by staff at FCC-Coleman is for outgoing certified mail." (¶ 8, Exhibit attached to Doc. 14)

The United States relies upon the reasoning in *Natson* to challenge the timeliness of Carson's motion to vacate. Natson had until September 4, 1999, to timely file a Section 2255 motion. His motion—which he signed and dated September 3, 1999—was not received by the district court until September 23, 2009. Citing *Houston*, the *Natson* court explained:

> In the *Houston* opinion (*Houston*, by the way, involved a state prisoner), the Supreme Court wrote that prison authorities "have well-developed procedures for recording the date and time at which they receive papers for mailing." *Houston*, 108 S. Ct. at 2384-85. To us, this observation in the opinion—part of the policy grounds suggested to explain the decision to allow delivery to prison officials as a filing—is a statement of a fact making up the case then before the Houston court. We do not read these quoted words to have been a legal order commanding that the Federal Executive Branch's Bureau of

---

[2] Carson does not allege that he sent his motion in January, 2010, as certified mail.

> Prisons must create or maintain a specific kind of record: a contemporaneous mail-received-from-prisoner log for each and all federal places of incarceration.
>
> We also do not understand *Houston* to have held (or said) that an inquiry about the time—the specific date—of delivery to prison officials is something other than a question of fact. Nor do we understand *Houston* to hold (or say) that no evidence would be competent to establish the fact of time of delivery, except a contemporaneous mail-received-from-prisoner log (or that such logs could never be disputed). Most important, we do not understand the Supreme Court in *Houston* to hold (or say) that factual representations, about timing, by convicted felons must be accepted—as a matter of law—as accurate, unless the Executive Branch has one particular piece of evidence in hand to refute the prisoner's claim.

*Natson*, 494 Fed. App'x at 5.

Natson filed an affidavit averring that he presented his motion to prison authorities for mailing on September 3, 2009. In *Natson* the United States moved to dismiss the Section 2255 motion as time-barred and provided prison mailing records showing that Natson sent certified mail to the district court on September 18, 2009.[3] The United States also submitted the affidavit of the mailroom supervisor at Coleman which details the prison's routine mailroom practice of prison staff taking outgoing mail to the post office for mailing within 24 hours of receipt from a prisoner. Because Natson's motion was delivered to prison authorities on September 18, 2009, the affidavit declares that Natson must have given the motion to

---

[3] *See Natson v. United States*, Case No. 4:05-cv-21, Middle District of Georgia, Columbus Division, Exhibit attached to Doc. 216.

prison staff no earlier than September 17, 2009. *Natson*, 494 Fed. App'x at 2. Based upon the mail records and the prison's routine mailroom practice, *Natson* concluded:

> Based on the records and on the prison's mailing–within–24-hours routine practice, [the mailroom supervisor] indicated that—contrary to Natson's signature date—Natson did not give his motion to prison staff to be mailed on 3 September. Beyond Natson's own certification of time about his motion, Natson presented no evidence; for example, he did not offer evidence that the customs and practices in September 2009 for, or records of, forwarding prisoner mail were incorrectly described by the prison staff. On this record, the motion to dismiss was granted.
>
> We accept that, at the moment prison authorities received Petitioner's 2255 motion, the motion was filed; that principle is the bright line legal rule of *Houston*. But in the light of all the evidence, we see no clear error in the district court's factual determination that Natson delivered his motion to prison authorities sometime after 4 September 2009. Thus, the district court properly dismissed Natson's motion as untimely.

494 Fed. App'x at 2.

Similar to Natson, Carson filed an affidavit averring that he gave his motion to vacate to prison officials for mailing on January 14, 2010. (Doc. 17 at 3) The United States presents the affidavit of the mailroom supervisor at Coleman who avers:

> If inmate Carson indicated that his mail was legal/special mail, then he would have been authorized to seal it himself and provide it to staff for mailing. Pursuant to policy, staff would then have noted the date of receipt on the back of the envelope and would have stamped it with the following statement: "The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has neither been opened nor inspected. If the writer raised a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer

> enclosed correspondence for forwarding to another addressee, please return the enclosure to the above address."
>
> In such a circumstance, the date of receipt by BOP staff would be indicated on the back of the envelope. It would have been taken to the post office for mailing within approximately 24 hours of receipt.

The envelope containing Carson's motion bears a "certified mail" tag, a date stamp of March 18, 2010, and the disclaimer described by the mailroom supervisor.

Carson's case is not factually distinguishable from Natson's. Both prisoners claim to have timely presented their motion to vacate to prison officials for mailing before the limitation expired but that prison officials processed their mail after the limitation expired. The evidence *Natson* found sufficient to refute the prisoner's alleged filing date includes a certified mailing receipt and the mailroom supervisor's affidavit. Similarly, the United States presents in Carson's case the mailroom supervisor's affidavit, and the mailing envelope bearing both the certified mail tag and the date stamp from the Coleman mailroom. Evidence in both Natson's and Carson's cases shows the processing of mail in compliance with the prison's established routine mailroom practices. Evidence in neither Natson's nor Carson's case affirmatively demonstrates when the prisoner actually gave his mail to prison officials for mailing.

Beyond Carson's own certification about when he presented his motion to prison officials for mailing, he presents no other evidence to substantiate his claim.

He asserts no disagreement with the mailroom supervisor's description of the routine mailroom practices at Coleman and presents no evidence affirmatively demonstrating that he mailed the motion on a date other than March 18, 2010, as stamped on the mailing envelope. Accordingly, based on the evidence, Carson presented his motion to prison authorities for mailing, at the earliest, on March 17, 2010, a date beyond the expiration of the federal limitation.

Carson argues entitlement to equitable tolling. Equitable tolling is appropriate when a prisoner's petition is untimely "because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Johnson v. United States*, 340 F.3d 1219, 1226 (11th Cir. 2003). "[E]quitable tolling applies only in truly extraordinary circumstances." *Johnson*, 340 F.3d at 1226. "The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner." *Drew*, 297 F.3d at 1286.

Carson fails to demonstrate any extraordinary circumstance that caused him to erroneously calculate the period for timely filing a federal habeas petition through the exercise of due diligence. Consequently, no basis exists entitling Carson to equitable tolling. The motion is time-barred, precluding federal review. Any other pending motion is **DENIED AS MOOT**. The clerk must enter a judgment against Carson and close this case.

## CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

It is further ordered that Carson is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id*. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To merit a COA, Carson "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Because the motion to vacate is time-barred, Carson is entitled to neither a certificate of appealability nor to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on March 31, 2014.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE